IN RE ESTATE OF ANN BYBEE.

MARY RANSOM et al., Appellants, v. MARY SIGLER et al.,
Appellees.

**WILLS:** Probate—Refusal to Probate—Construction of Order.  A
1   general order refusing probate of an instrument as a will, would
imply that the court passed on all questions presented; but not
so when the record shows that the refusal was based on a spec-
ified ground.  Sec. 3283, Code, 1897.

**WILLS:** Form and Contents—Will in Form of Deed.  The *form* of
2   a will is immaterial, if it makes a post mortem disposition of
property and is properly signed and witnessed.  *Held*, an in-
strument, in form a warranty deed, may constitute a valid
will.  Sec. 3274, Code, 1897.

**WILLS:** Execution—Attestation by Witnesses—Form, Manner and
3   Place of Signing.  A subscribing witness need not affix his name
to the will in any particular *form* or *manner* or at any partic-
ular *place* on the instrument.  The essence of his signing is
that he *witnessed the execution* of the instrument.  *Held*, an
instrument was sufficiently witnessed as a will when, following
the signature of the testator, one witness signed his name
under the caption, "Witness to signature," and the other wit-
ness filled out on the same paper and *signed* a certificate which
was, in form, an acknowledgment to an ordinary warranty deed.

**JUDGMENT:** Res Adjudicata—Matter Actually Adjudicated—Ap-
4   peal.  Principle recognized that a judgment or opinion of the
Supreme Court may not have operation beyond the particular
question litigated on appeal.  *Ransom v. Pottawattamie County*,
168 Iowa 570, reviewed, and dicta therein indicated.

*Appeal from Pottawattamie District Court.*—E. B. WOOD-
RUFF, Judge.

MONDAY, JANUARY 15, 1917.

REHEARING DENIED SATURDAY, MAY 12, 1917.

MARY RANSOM and Amasa Bybee applied for an order

to probate an alleged will of Ann Bybee's. The application was denied, and proponents appeal.—*Reversed.*

*Killpack & Northrop* and *C. E. Swanson,* County Attorney, for appellants.

*F. W. Miller,* for appellees.

SALINGER, J.—I. The brief for appellee has 76 pages, and strongly and exhaustively presents many questions. We are of the opinion that, while these were all pertinent before the decision appealed from was made, but one—by possibility, two—needs our consideration. No doubt many of the matters now argued would have been material if the court below had merely made an order declining probate; for such order would be presumed to pass upon every issue presented. But, of course, when the record shows affirmatively that none but stated questions were decided, the aforesaid presumption has no room to operate. We cannot review what has never been decided. The trial court ruled:

1. WILLS: probate: refusal to probate: construction of order.

"Now, as to the question of adjudication and estoppel. I don't think that it is necessary for this court to determine those questions, because the question that I have determined ends this case, as far as this court is concerned."

In our view of the record, the only question that remains for us to pass upon is whether the paper offered for probate does lack the required formalities of a will, and required attestations. The appellee contends for many things as being essential and necessary formalities of a last will and to the witnessing of the same. We think it will conduce to clarity if, instead of inquiring whether all that appellee demands is required, we proceed to state what formalities, attestations and witnessing are, in our opinion, necessary, and then to say whether any of these are lacking here.

II.    We glean from an examination of
an abstract, additional abstract for appel-
lee, an amended additional abstract for

**2. WILLS: form and contents: will in form of deed.**

appellee, the said brief for the appellee, the
original brief for appellant, and the one filed in reply,
that the instrument proposed for probate and rejected
had the caption, "Warranty Deed." The body of it
is in the ordinary form of warranty deeds, with claim
of perfect title, authority to convey, freedom from liens and
incumbrances, and a covenant to warrant and defend title.
It purports to be made to the county of Pottawattamie, in
consideration of $1 and certain other provisions named in
the title.    It contains this clause:

"This indenture to be effective after my death on the
condition that Pottawattamie County, Iowa, pay any debts
that I may be owing at that date, and pay my funeral ex-
penses, if any, and said land to be sold, and balance of said
amount to be used for the benefit of the poor of said
county."

In connection with the signature of the
grantor is, "Witness to signature, John A.
Ransom." It purports to have been signed
on the 7th day of January, 1909.

**3. WILLS: execution: attestation by witnesses: form, manner and place of signing.**

In the appropriate place for acknowl-
edgment of the paper is this:

"State of Iowa, Pottawattamie County, ss.   On the 7th
day of January, A. D. 1909, before me, a notary public
within and for said county, personally came Ann Bybee
(widow), personally known to me to be the identical per-
son whose name is affixed to the above instrument, a legal
grantor thereunder, and acknowledged the execution of the
same to be her voluntary act and deed, for the purposes
therein expressed. Witness my hand and notarial seal.
N. Swanson, Notary Public."

To this the notarial seal of Swanson was attached. We

understand the trial court to hold that this instrument cannot be probated because it is not witnessed as wills are required to be. "That it lacks the formalities necessary to make it a will."

The only requirement the statute makes is found in Section 3274 of the Code, 1897, and is that the paper shall be signed by the testator "and witnessed by two competent persons." We do not understand that the competency of these witnesses is challenged, if there be two "witnesses," in contemplation of law.

The alleged testatrix signed a paper purporting to convey land, upon condition that the conveyance should not take effect until after her death. The law declares that this is not a conveyance, but a testamentary paper. It is of no consequence what she thought was the legal effect of it. The law settles its status and declares what it is. It need not be proved that the testator read over the will before signing, or was informed of its contents. *Scott v. Hawk,* 107 Iowa 723. It is only when the terms of the writing are not clear that collateral evidence may be received to ascertain its intent. *In re Estate of Longer,* 108 Iowa 34, 37. Otherwise, the intent will be gathered from the instrument itself. *Wilson v. Carter,* 132 Iowa 442. *In re Estate of Longer,* 108 Iowa, 34, 37, cites from *In re Lautenschlager's Estate,* (Mich.) 45 N. W. 147, that:

"An instrument in the form of a deed, but executed with the formalities of a will, and by its terms to take effect after death, has been held a will."

And a paper stating, "I agree to will," may be a will. *In re Estate of Longer,* 108 Iowa 34.

If what the testator does sign proves to be what the law declares is a testament, and witnesses duly attest it, they have attested a will, though neither the testator nor the witnesses knew that the law declared the writing to be a will. As bearing upon this thought, it has been held that,

where the will is witnessed, there is a conclusive presump-tion that it was signed before it was witnessed; that. such being the fact, "it was executed with all the formality re-quired by the statute;" that it is unnecessary that witnesses should see the testator subscribe the will, nor necessary that testator should state to the witnesses the character and purpose of the instrument which they witness. *In re Will of Hulse,* 52 Iowa 662; *Nixon v. Snellbaker,* 155 Iowa 390; and, that a testator need not declare the instrument to be his last will, *Scott v. Hawk,* 107 Iowa 723. An attestation clause is not essential. *Hull v. Hull,* 117 Iowa 738; *Nixon v. Snellbaker,* 155 Iowa 390. In the absence of statute, it is not necessary that the witnesses attest in the presence of each other. *Hull v. Hull,* 117 Iowa 738. It is immaterial that witnesses write their names in the body of the will (*Franks v. Chapman,* 64 Tex. 159), or in what particular part of the will they subscribe their names. *Murray v. Murphy,* 39 Miss. 214. As said, the only requirement which the statute makes in terms is that the paper shall be signed by the testator and signed by two competent persons.

The law declares that this paper is testamentary. It is signed by the one professing to dispose. On the same side of the paper where the alleged testator signs, John A. Ransom signs as a witness to signature. Had there been another competent person so signing and signing in that place, there could be no question that the paper was duly signed, and was executed with all formality which our statute exacts. But there is no second signature of that kind. As has been said, the paper is in the form of a deed. It has a blank for acknowledgment. The other person as-serted by the appellant to be the second witness signs only at the bottom of that blank, and, instead of signing as a witness, signs, "N. Swanson, Notary Public." If this paper was rightly rejected as a will, it seems it was done upon the narrow ground that Swanson signed as he did and where

he did.  It has been seen that the form and place of sign-
ing are not of the essence, nor do we know of any statute
requirement that the witness must sign as witness—that is,
put down his name and add "witness," which Swanson did
not do.  Let us see what he did do.  He added "Notary Pub-
lic" below his signature, and added his seal.  Above these,
he says: (1) That the signer of the paper was in his pres--
ence, because he says that she personally came to him; (2) ·
that he knows her to be the identical person whose name
is signed to the instrument which is above his certificate,
and that she "acknowledged the execution of the same to be
her voluntary act and deed for the purposes therein ex-
pressed."  The signing of the paper and adding "witness"
states by inference only that it was done in the presence of
the testator, and that she voluntarily executed the paper for
the purposes expressed in the paper.  Swanson says as
much as this in terms.  We fail to see why the additional
fullness nullifies the essential fact that Swanson declares
over his signature that he saw the paper signed; that he
was present and received a statement from the testator that
she was signing for the purposes expressed in what she
signed.  It cannot be that doing more than the statute re-
quires, and including all the essentials of what it does re-
quire, fails for not obeying the statute.  The greater must
include the less.

"The important fact is whether he signed as a witness
under circumstances rendering his attestation proper."
*Hull v. Hull*, 117 Iowa, at 740.

The fact that a county clerk, when called upon by a
testator to witness his will, attaches thereto his official cer-
tificate of the acknowledgment of the due execution of the
will by the testator, does not affect the validity of the clerk's
signature to such will as a witness.  *Franks v. Chapman*,
64 Tex. 159.  It is sufficient if the testator subscribes his
will in the presence of one witness, or acknowledges to two

that the signature is his; and, where it is subscribed in the presence of one witness, and then taken by the testator to a justice of the peace, to whom he points out his signature, declares the writing to be his will, and gets the justice to sign and certify it, not as a witness, but in his official character, the fact that he does not formally request the justice to attest the will as a witness does not impair the force of his attestation. *Payne v. Payne,* (Ark.) 16 S. W. 1. If one of the subscribing witnesses to a will, being a justice of the peace, prefix to his signature a certificate of the acknowledgment of the will by the testator in the ordinary form of certificates of acknowledgments of deeds, etc., it will not vitiate his attestation. The certificate is superfluous and useless, and cannot have the effect to impair his signature, which was the essential act to be done (*Murray v. Murphy,* 39 Miss. 215) ; and we hold, in *Hull v. Hull,* 117 Iowa 738, that a subscribing witness who is competent, and who is also a notary public; may sufficiently witness the execution of a will by affixing his certificate of acknowledgment to the same, when requested by testatrix to act as a witness.

We are of opinion that the paper proposed was so signed, attested and executed as to be entitled to probate.

III. The trial court, while declining

**4. JUDGMENT:** *res adjudicata*: matter actually adjudicated: appeal.

to pass upon an adjudication or an estoppel, seems none the less to have felt himself concluded by the decision in *Ransom v. Pottawattamie County,* 168 Iowa 570, wherein the very instrument now proposed as a will was involved. This statement is found in the record:

"I cannot resist the conviction that the Supreme Court was correct in saying it (this paper) was void for all purposes. Now, in view of the fact that the Supreme Court has said what it has, I think I ought to make the ruling that I have made."

In that case, the county claimed that this paper was a presently effective conveyance. Ransom claimed the right to have title quieted, despite this paper. The sole answer of the county was that the instrument was such conveyance. Ransom urged for argument that there was no conveyance, because the pretended deed was neither delivered nor accepted, and, merely as further argument for the essential proposition that the paper was not an effective conveyance, that it was something other than that, to wit, a testamentary paper. If it was that, then, under the issues we have in Ransom's case, there was an end, and Ransom was entitled to have his title quieted. It was quite immaterial whether the paper claimed to be testamentary was attested as a will should be. Whether it was or not thus attested, the naked fact that it was a testamentary disposition established that it was not a conveyance presently effective, and defeated the county. In the course of the decision, a remark is made that the paper was not "executed in accordance with the law governing the execution of wills." Self-evidently, this is not of the decision, wholly unnecessary to it, and the further statement that said paper "is wholly ineffectual for any purpose" is also dictum. At least, it must be limited to what we had before us— the question of effective conveyance—and thus to hold that the paper was wholly ineffectual to make such conveyance. Our *decision* was that this paper was not an effective conveyance. The only relevant argument for this was that it was a testamentary paper. The trial court seems to have been controlled, not by what was decided in the *Ransom* case, but by something that was merely *said* in the case.

The cause must be—*Reversed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.