# Mary W. Hayes

*v.*

# Thomas Boylan *et al.*

*Filed at Ottawa May 12, 1892.*

1. DEED—*of the delivery.* The owner of land made and acknowledged a deed thereof to his three sons, Charles, John and Thomas, after which he handed the same to Charles, saying, "Take this deed and put it in our box in the bank." The grantor did no other act showing an intention to deliver the deed, but requested Charles not to let the other grantees know anything about the matter until after the grantor's death. He also retained possession and control of the land up to his death: *Held,* that the instrument was void as a deed for want of delivery in the grantor's lifetime.

2. SAME—*grantee as agent for the grantor.* The direction to one of several grantees in a deed to take the deed and put it "in our box in the bank," was not a delivery, but the mere employing of such grantee as the agent of the grantor to do an act for him, whereby he could retain the custody of the deed during his life. In thus taking and depositing the deed, the act of the grantee was the act of the grantor, and although the box in the bank belonged to such grantee, yet since it was used by both and under the control of each, the deed in such box was still in the possession and custody of the grantor,—as much so as if he had kept it about his person.

3. SAME—*delivery by parent, as to infant grantee.* Where a parent executes a deed to an infant child which is beneficial to the child, and manifests, by his words and conduct, an intention that the deed shall operate at once, a delivery will be presumed, and proof of actual delivery is unnecessary. This is so for the reason that the infant is incapable of doing any act which he may not avoid at his majority, and also because it is the duty of the parent to accept and preserve the deed for him.

4. SAME—*delivery shown by intention—inducements to grantee—permitting improvements.* It has been held that when the grantor intends, when executing a deed, to be understood as delivering it, that will be sufficient; and also that when the grantor induces the grantee to believe that a deed had been executed which made him the owner of certain premises, and afterward permits the grantee to act upon this belief in the construction of valuable improvements on the land, he can not be allowed to say that the deed is inoperative for want of a formal delivery.

5. WITNESS—*competency to prove delivery of deed—against a devisee.* On bill for the partition of land claimed under a deed from a deceased person, the delivery of which is disputed, a grantee in such deed is not a competent witness in his own behalf, to prove the delivery of the deed, as against a devisee of the same land.

APPEAL from the Circuit Court of Livingston county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. SHEEN & LOVETT, for the appellant:

The burden of proof rested on appellee to prove a delivery of the deed, without which no title passed. *Hulick* v. *Scovill,* 4 Gilm. 159; *Wiggins* v. *Lusk,* 12 Ill. 132.

John Boylan was not a competent witness to prove a conversation with his father about that deed. (Starr & Curtis, chap. 51, sec. 2.) Besides, if such evidence were competent, it would only show an intention to convey, and not that a legal delivery of the deed had been made, which is the question at issue. An acceptance is also necessary to make a delivery of a deed. *Herbert* v. *Herbert,* Breese, 354; *Wiggins* v. *Lusk,* 12 Ill. 135; *Kingsbury* v. *Burnside,* 58 id. 322.

The declarations were testamentary in their character, and such conveyance was void for want of compliance with the Statute of Wills. (*Olney* v. *Howe,* 89 Ill. 556.) Besides, these grantees are relatives seeking to obtain title by parol, and their testimony should be scrutinized very closely. *Wallace* v. *Rappleye,* 103 Ill. 241.

The deed in the box of the grantor was in the grantor's possession, and where possession of a deed is surreptitiously obtained, it would stand on the same footing as a forged deed. *Hadlock* v. *Hadlock,* 22 Ill. 388.

An agent is held to the strictest fairness and integrity, and is precluded from taking a position antagonistic to his agency. *Fairman* v. *Babin,* 29 Ill. 75; *Railroad Co.* v. *Kelly,* 77 id. 434; *Davis* v. *Hamlin,* 108 id. 49; *Uhlrich* v. *Muhlke,* 61 id. 533.

A deed voluntarily placed in the hands of a grantee is never to be treated as an escrow. *People* v. *Bostwick*, 34 N. Y. 445; *Weber* v. *Christen*, 121 Ill. 97.

The rule concerning the delivery and acceptance of a deed is not the same where the grantees are adults, (like in the case at bar,) and a case where the grantee is a minor. *Bryan* v. *Wash*, 2 Gilm. 557; *Masterson* v. *Cheek*, 23 Ill. 72.

The law concerning the delivery of a deed is laid down by this court to be, that the deed must be delivered to the grantee or his agent with intent to have it become operative at once, and the grantor must lose all control over it. *Cline* v. *Jones*, 111 Ill. 563; *Byars* v. *Spencer*, 101 id. 429; *Gorman* v. *Gorman*, 98 id. 362; *Wormley* v. *Wormley*, 98 id. 544; *Stinson* v. *Anderson*, 96 id. 373; *Bovee* v. *Hinde*, 135 id. 137.

Messrs. PUTERBAUGH, PAGE & PUTERBAUGH, for the appellees:

In the case of an actual delivery by the grantor, though it is accompanied with a verbal understanding that it is not to take effect except upon certain conditions, the title will nevertheless pass, upon the well settled principle that a deed voluntarily placed in the hands of the grantee is never to be treated as an escrow. *Weber* v. *Christen*, 121 Ill. 97; *People* v. *Bostwick*, 32 N. Y. 445; *Masterson* v. *Cheek*, 23 Ill. 72; *Bryan* v. *Wash*, 2 Gilm. 557.

No particular form or ceremony is necessary to constitute a delivery. 3 Washburn on Real Prop. (4th ed.) 286; Tiedeman on Real Prop. sec. 813; *McElroy* v. *Hiner*, 133 Ill. 166; *Byars* v. *Spencer*, 101 id. 429; *Gunnell* v. *Cockerill*, 79 id. 79; *Stern* v. *Duvall*, 77 id. 476; *Bryan* v. *Wash*, 2 Gilm. 557.

That the law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlement, especially when made to infants, than in ordinary cases of bargain and sale, see *Bryan* v. *Wash*, 2 Gilm. 557, and *Masterson* v. *Cheek*, 23 Ill. 72.

In the view that this was a voluntary settlement upon the son, the decisions are uniform that the possession of the deed by the grantor until his death did not invalidate or defeat it. *Vilbos* v. *Beaumont*, 6 Vern. 100; *Bole* v. *Newton*, id. 464; *Claving* v. *Claving*, 2 id. 475; *Boughton* v. *Boughton*, 1 Atk. 625.

These cases are recognized as authority by Chancellor Kent in *Bonn* v. *Winthrop*, 1 Johns. Ch. 329, wherein he says: "The instrument is good as a voluntary settlement, though retained by the grantor in his possession until his death.",

In *Reed* v. *Douthit*, 62 Ill. 348, the court, in the opinion, further say: "But if it was not delivered, and was intentionally retained by the grantor until his death, it being intended as a voluntary settlement upon the son, it must, under the authorities, have the force and effect of a valid deed conveying the fee in the land mentioned therein." *Benneson* v. *Aiken*, 102 Ill. 284; *Price* v. *Hudson*, 125 id. 285; *Jordan* v. *Davis*, 108 id. 336; *Walker* v. *Walker*, 42 id. 311; 3 Washburn on Real Prop. 288-293.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Thomas Boylan and John Boylan filed their petition for partition in the circuit court of Livingston county, praying for the partition of a certain tract of land lying in that county, which they allege was conveyed to them and their brother, Charles Boylan, as tenants in common, by deed of their father, Patrick Boylan. Mary W. Hayes and Charles Boylan were made defendants to the petition, and they each answered,— the answer of Mary W. Hayes denying that the deed under which the petitioners claim was ever delivered, and alleging that the land in question was devised by the last will and testament of Patrick Boylan to Charles Boylan, in trust, in part for her use. On hearing, the circuit court decreed that the prayer of the petition be granted, and that partition be made

accordingly, and Mary W. Hayes, by her appeal, brings that decree before us for review.

The decree finds that title was vested in the petitioners by virtue of the deed of Patrick Boylan. That deed is inconsistent with and repugnant to the rights of the heirs-at-law of Patrick Boylan, deceased, if he died intestate, and it is also inconsistent with and repugnant to the devises in what is set up in the answers as his last will and testament. The question, therefore, whether the decree of the circuit court is erroneous, depends entirely upon whether that deed operated as a valid conveyance of the land, and in the determination of that question it can not be necessary, nor even proper, to either pass upon the validity of the will or to give construction to its terms.

The only evidence in the record in regard to the execution of the deed is that of Charles Boylan. The evidence of John Boylan having been objected to for incompetency, must be excluded under section 2, chapter 51, page 488, of the Revised Statutes of 1874.

Charles Boylan produced the deed, and testified in regard to its execution, thus: "My father signed a deed to the Livingston county land at my house, in my presence, while he was residing with me. No one else was present. I have the deed with me. This is it. I think father signed it the day it bears date. He signed it the day before Mr. Hough took the acknowledgment. * * * No part of the $6000 mentioned in the deed was paid father. Nothing was paid for it. After father signed the deed it remained in his room. I think I saw him hand it to Hough. When Hough signed it he gave it to father, and father kept it. I went down stairs with Hough and came back, and he handed me the deed and said, 'Take this deed and put it in our box in the bank.' Before his sickness we each had one private box in the bank. His eyes were so bad that he could not attend to it. Sometimes he had the cashier at the bank to look over his papers. He had me bring his box

home and look his papers over, and took such of his papers as he thought valuable and put them all in the box with mine. He said, 'Take this deed and put it in the box in the bank.' When he gave me the deed he said, 'The boys need not know anything about this till after my death,'—that was all he said. I put the deed with the other papers as directed, and it remained there till after father's death." On cross-examination he further testified, among other things : "John was there one day talking about his family. He had a large family of girls, was hard up, and owed father some interest, and father said, 'You are better off than you think you are,—you will get $2000 out of the land over the river after I am dead, and that will come handy,'—about $2000 I think is the way he put it. Father retained possession of the land through John Kane and his sons during his life. They had a written lease. In 1890, after making the deed, he got some cash rent from there. * * * When father first spoke of making the deed he spoke of reserving the rents,—that was a couple of months before he made it. * * * The deed was given to me immediately after it was acknowledged. He told me to put it in the box,—in the box he and I kept our papers in,—and I did so: It was my box and he had papers in it, and the deed was put in there. It was delivered the way I stated."

This leaves no doubt that no act was done by the grantor intended as a present delivery of the deed, for handing it to Charles Boylan, and at the same time telling him to "take this deed and put it in our box in the bank," was not a delivery to Charles, but it was the mere employing him, as an agent of the grantor, to do an act for him, whereby he could retain the custody of the deed during his life. In thus taking and depositing the deed the act of Charles was the act of Patrick, and although the box in the bank belonged to Charles, yet since it was used by both Patrick and Charles, and under the control of each, the deed in that box was just as much within the possession and control of Patrick as if he had retained it

about his person. *Jordan* v. *Davis et al.* 108 Ill. 336; *Bovee* v. *Hinde et al.* 135 id. 137; *Chadwick* v. *Webber*, 3 Greenlf. 141.

It is plain that the intention of Patrick Boylan was to have the deed to take effect only after his death. On its face the deed purported to operate presently, but he intended to, and did, retain the possession of the land, and received and enjoyed its rents during his life. He did not deliver the deed in escrow, to a third party, with direction to him to deliver it to the grantees therein named, after his death, but he retained its possession himself until his death, intending that it should become operative only after that event,—in other words, he intended it should operate precisely as a will, without having it executed and witnessed as a will.

It has been held that where a parent executes a deed to an infant child which is beneficial to the child, and manifests, by his words and conduct, that he intends that the deed shall operate at once, a delivery will be presumed, and proof of actual delivery is unnecessary; but this is because the infant is incapable of doing any act in regard to the deed which he might not avoid on reaching his majority, and it is the duty of the parent, as his natural guardian, to accept and preserve the deed for him. (*Bryan et al.* v. *Wash*, 2 Gilm. 568; *Masterson* v. *Cheek et al.* 23 Ill. 76; *Newton* v. *Bealer*, 41 Iowa, 334.) The grantees in this deed were all beyond the age of infancy,—men of families, who had for many years been acting for themselves. It has also been held that where a grantor intends, when executing a deed, to be understood as delivering it, that will be sufficient; and also that where the grantor induces the grantee to believe that a deed had been executed which made him the owner of certain premises, and afterwards permits such grantee to act upon this belief in the construction of valuable improvements on the land, he can not then be allowed to say that the deed was, in fact, inoperative for want of a formal delivery. (*Masterson* v. *Cheek et al. supra; Walker* v. *Walker*, 42 Ill. 311; *Reed* v. *Douthit*, 62 id. 348.)

But it has been seen that Patrick Boylan did not here, as evinced by anything proved to have been said or done by him at the time, intend, when executing the deed, to be understood as delivering it, and no act is proved to have been done by the grantees upon the faith of anything said by him as to the execution of the deed.

This case is analogous to *Cline et al.* v. *Jones et al.* 111 Ill. 563, only there the circumstances tending to prove that what was done was intended as a delivery of the deed were much stronger than they are here. There, John Cline went alone before a justice of the peace and had drawn up, and he signed and acknowledged, a warranty deed of the land in controversy to Mrs. Jones, his daughter, the deed reciting it was made in consideration of filial love and affection, and òne dollar. At the time, the grantor told the justice that he had given all his other children land but none to Mrs. Jones, and he felt he ought to give her this land. The grantor took the deed away and ever after retained it in his possession till his death. He also kept possession of the land, received the rents from it and paid the taxes on it until his death. After he had thus signed and acknowledged the deed he told different persons that he had made it, that he had made all his children equal, that the land would be Mrs. Jones' at his death; and to Mrs. Jones and her husband he said, several times, he had fixed it so that the land would be hers at his death, but that if she would move on it and live there it should then be hers. This she did not do. We held there was no delivery of the deed, and that for that reason it conveyed no title. The conclusion was reached after a careful examination of all the authorities bearing upon the question, and the reasons therefor are given in an elaborate opinion by Mr. Justice SHELDON. Among other things it is said in the opinion: "The deed, by its purport, was absolute, conveying the grantor's entire interest, to operate immediately. But the evidence shows the deed was not intended to be absolute, but to be qualified in its effect;

that it was not intended to convey the grantor's whole interest, but that he meant to have a life estate unless the grantee should move upon the land, which she never did; that the deed was not intended to operate presently, but only upon the grantor's death, or going upon the land to reside. The evidence shows the distinct intention not to create a present estate in the grantee. As, then, there was never any actual delivery of the deed, but the grantor ever kept it in his own possession, and as it never was his intention that the deed should presently take effect and become operative according to its terms, there was no delivery of the instrument as the deed of the grantor, and it was not valid as a deed. As Mrs. Jones never moved on the land, this made the deed one to take effect at the grantor's death, which was a disposition of property of a testamentary character, and invalid, because not in compliance with the Statute of Wills." See, also, *Byars* v. *Spencer*, 101 Ill. 429; *Price* v. *Hudson*, 125 id. 284; *Bovee* v. *Hinde et al. supra.*

The decree of the court below is reversed.

*Decree reversed.*